**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IRON WORKERS LOCAL 12 PENSION FUND**, by John R. Bissaillon and Henry Digeser, as Trustees; **IRON WORKERS LOCAL 12 HEALTH INSURANCE FUND**, by John R. Bissaillon and Henry Digeser, as Trustees; **IRON WORKERS LOCAL 12 JOINT TRAINING AND EDUCATION FUND**, by John R. Bissaillon and Henry Digeser, as Trustees; **IRON WORKERS LOCAL UNION NO. 12 AND EMPLOYERS COOPERATIVE TRUST**, by John R. Bissaillon and Henry Digeser, as Trustees; **IRON WORKERS LOCAL UNION NO. 12**, by John R. Bissaillon, as Business Manager; **IRON WORKERS DISTRICT COUNCIL OF WESTERN NEW YORK AND VICINITY WELFARE FUND**, by Laurie Good, as Administrative Manager; **IRON WORKERS DISTRICT COUNCIL OF WESTERN NEW YORK AND VICINITY PENSION FUND**, by Laurie Good, as Administrative Manager; **IRON WORKERS DISTRICT COUNCIL OF WESTERN NEW YORK AND VICINITY ANNUITY FUND**, by Laurie Good, as Administrative Manager; **IRON WORKERS DISTRICT COUNCIL OF WESTERN NEW YORK AND VICINITY SUPPLEMENTAL BENEFIT FUND**, by Laurie Good, as Administrative Manager; **UPSTATE NEW YORK DISTRICT COUNCIL OF IRON WORKERS EMPLOYERS COOPERATIVE TRUST**, by H. L. Stephenson and Tim Starwald, as Trustees; **UPSTATE IRONWORKER EMPLOYERS' ASSOCIATION, INC.**, H. L. Stephenson, as President; **INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS LOCAL UNION NO. 440 JOINT APPRENTICESHIP TRAINING FUND**, by Robert Cole and H. L. Stephenson, as Trustees; **IRON WORKERS LOCAL UNION NO. 440**, by Robert Cole, as Business Manager; **IRON WORKERS LOCAL NO. 60 ANNUITY PENSION FUND,** by Matthew Nesbitt and Emily Abrantes-Weller, as Trustees; **IRON WORKERS LOCAL UNION NO. 60 TRAINING, SKILL IMPROVEMENT, EDUCATION AND APPRENTICESHIP FUND,** by Matthew Nesbitt and Emily Abrantes-Weller, as Trustees; **IRON WORKERS LOCAL UNION NO 60**, by Matthew Nesbitt, as Business Manager; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **COMPLAINT** <br><br> **Civil Action No.** <br> 1:23-cv-1289 <br> (MAD/DJS) |
| Plaintiffs, | ) ) ) |
| -against- | ) ) ) |
| J.D. MISCELLANEOUS METALS, LLC; GEORGE PETERS, Individually and as a Member of J.D. Miscellaneous Metals, LLC; and DAVID JACKSON, Individually and as a Member of J.D. Miscellaneous Metals, LLC; | ) ) ) ) ) ) |
| Defendants. | ) ) |

{B0351942.1}

Plaintiffs, by their undersigned attorneys, Blitman & King LLP, complaining of the Defendants, respectfully allege as follows:

## I.     JURISDICTION AND VENUE

1.      This is an action arising under the Employee Retirement Income Security Act of 1974 [hereinafter "ERISA"] [29 U.S.C. §§1001 et seq.].  It is an action by fiduciaries of employee benefit plans for monetary and injunctive relief to redress violations of ERISA Sections 404, 406, and 515 [29 U.S.C. §§ 1104, 1106, and 1145].  It is also an action under Section 502(a)(2) for breach of fiduciary duty against employers that failed to timely remit contributions and otherwise abide by the documents that establish and maintain ERISA covered plans [29 U.S.C. §1132(a)(2)].

2.      This is an action arising under Section 301(a) of the Labor-Management Relations Act of 1947, as amended [hereinafter "LMRA"] [29 U.S.C. §185(a)].  It is a suit for, among other things, violations of a contract between an employer and a labor organization representing employees in an industry affecting commerce as defined in the LMRA [29 U.S.C. §141 et seq.].

3.      Jurisdiction is conferred on this Court by ERISA Section 502(e) [29 U.S.C. §1132(e)], without respect to the amount in controversy or the citizenship of the parties, as provided in ERISA 502(f) [29 U.S.C. §1132(f)].

4.      Jurisdiction is conferred on this Court, without respect to the amount in controversy, pursuant to LMRA Section 301 [29 U.S.C. §185(a)], and pursuant to federal law [28 U.S.C. §1337].

5.      Venue is established in this Court by ERISA Section 502(e)(2) [29 U.S.C. §1132(e)(2)] and LMRA Section 301(c) [29 U.S.C. §185(c)].  It is an action brought in the district where some of the plans are administered and where the breach took place.

6.      This is also an action arising under federal law [28 U.S.C. §1367].  It is an action where all non-federal claims raised in the Complaint are so related to the federal claims as to form part of the same case or controversy within the meaning of Article III of the United States Constitution such that this Court may exercise supplemental jurisdiction over those non-federal claims.

## II.      DESCRIPTION OF THE PARTIES

7.      Plaintiffs John R. Bissaillon and Henry Digeser are Trustees of the Iron Workers Local 12 Pension Fund [hereinafter "IW12 Pension Fund"].   Mr. Bissaillon and Mr. Digeser are fiduciaries of the IW12 Pension Fund, as defined in ERISA Section 3(21)(A) [29 U.S.C. § 3(21)(A)].  The IW12 Pension Fund is administered within the Northern District of New York at 17 Hemlock Street, Latham, New York 12110.

8.      Plaintiffs John R. Bissaillon and Henry Digeser are Trustees of the Iron Workers Local 12 Health Insurance Fund [hereinafter "IW12 Health Fund"].  Mr. Bissaillon and Mr. Digeser are fiduciaries of the IW12 Health Fund, as defined in ERISA Section 3(21)(A) [29 U.S.C. § 3(21)(A).  The IW12 Health Fund is administered at 17 Hemlock Street, Latham, New York 12110.

9.      Plaintiffs John R. Bissaillon and Henry Digeser are Trustees of the Iron Workers Local 12 Joint Training and Education Fund [hereinafter "IW12 Training Fund"].  Mr. Bissaillon and Mr. Digeser are fiduciaries of the IW12 Training Fund, as defined in ERISA Section 3(21)(A)

[29 U.S.C. § 3(21)(A)].  The IW12 Training Fund is administered at 17 Hemlock Street, Latham, New York 12110.  [The IW12 Pension Fund, IW12 Health Fund, and IW12 Training Fund are collectively referred to as the "IW12 Funds"].

10.     Plaintiffs John R. Bissaillon and Henry Digeser are Trustees of the Iron Workers Local Union No. 12 and Employers Cooperative Trust [hereinafter "IW12 E.C.T."].  The principal office and place of business of the IW12 E.C.T. is 17 Hemlock Street, Latham, New York 12110.

11.     Plaintiff John R. Bissaillon is the Business Manager of the Iron Workers Local Union No. 12 [hereinafter "Local 12"].  Local 12 is an unincorporated association maintaining its principal offices at 17 Hemlock Street, Latham, New York 12110 and is a labor organization in an industry effecting commerce within the meaning of the LMRA [29 U.S.C. §141 et seq.].  Local 12 represents employees with respect to the terms and conditions of employment, including, but not limited to, wages, benefits and supplements.

12.     Plaintiff Laurie Good is the Administrative Manager of the Iron Workers District Council of Western New York and Vicinity Welfare Fund ["IWDC Welfare Fund"], Iron Workers District Council of Western New York and Vicinity Pension Fund ["IWDC Pension Fund"], Iron Workers District Council of Western New York and Vicinity Annuity Fund ["IWDC Annuity Fund"], and Iron Workers District Council of Western New York and Vicinity Supplemental Benefit Fund ["SB Fund"].  The IWDC Welfare Fund, IWDC Pension Fund, IWDC Annuity Fund, and SB Fund are administered at the Design Center, 3445 Winton Place, Rochester, New York 14623-2950 [hereinafter the IWDC Welfare Fund, IWDC Pension Fund, IWDC Annuity Fund, and IWDC SB Fund are collectively referred to as "IWDC Funds"].  She has been directed and designated by the Board of Trustees, fiduciaries of the IWDC Funds as defined in Section

3(21)(A) of ERISA [29 U.S.C. §1002(21)(A)], to commence this action.

13.     Plaintiffs H. L. Stephenson and Tim Starwald are Trustees of the Upstate New York District Council of Iron Workers Employers Cooperative Trust [hereinafter "IWECT"].  The principal office and place of business of the IWECT is The Design Center, 3445 Winton Place, Rochester, New York 14623-2950.

14.     Plaintiff H. L. Stephenson is the President of the Upstate Ironworker Employers' Association, Inc. [hereinafter "UIWEA"].  The principal office and place of business of the UIWEA is 4522 Wetzel Road, Syracuse, New York 13090.

15.     Plaintiffs Robert Cole and H. L. Stephenson are Trustees of the International Association of Bridge, Structural and Ornamental Iron Workers Local Union No. 440 Joint Apprentice Training Fund [hereinafter "Local 440 Training Fund"].  Robert Cole and H. L. Stephenson are fiduciaries of the Local 440 Training Fund, as defined in ERISA Section 3(21)(A) [29 U.S.C. § 3(21)(A)].  The principal office and place of business of the Local No. 440 Training Fund is located at 10 Main Street, Suite 100, Whitesboro, New York 13492.

16.     Plaintiff Robert Cole is the Business Manager of Iron Workers Local Union No. 440 [hereinafter "Local 440"].  Local 440 is an unincorporated association maintaining its principal offices at 10 Main Street, Suite 100, Whitesboro, New York 13492 and is a labor organization in an industry affecting commerce within the meaning of the LMRA [29 U.S.C. §141 et seq.].  Local 440 represents employees with respect to the terms and conditions of employment, including, but not limited to, wages, benefits and supplements.

17.     Plaintiffs Matthew Nesbitt and Emily Abrantes-Weller are Trustees of the Iron Workers Local No. 60 Annuity Pension Fund ["IW60 Annuity Fund"] and the Iron Workers Local

No. 60 Training, Skill Improvement, Education and Apprenticeship Fund ["IW 60 Training

Fund"] [hereinafter the IW60 Pension Fund and IW 60 Training Fund are jointly referred to as

"IW60 Funds"].   Matthew Nesbitt and Emily Abrantes-Weller are fiduciaries of the IW60 Funds

as defined in ERISA Section 3(21)(A) [29 U.S.C. § 3(21)(A)].  The principal office and place of

business of the IW60 Funds is located at 500 West Genesee Street, Syracuse, New York 13204.

18.     Plaintiff Matthew Nesbit is the Business Manager of Iron Workers Local Union

No. 60 [hereinafter "Local 60"].  Local 60 is an unincorporated association maintaining its

principal offices at 500 West Genesee Street, Syracuse, New York 13204 and is a labor

organization in an industry affecting commerce within the meaning of the LMRA [29 U.S.C.

§141 et seq.].  Local 60 represents employees with respect to the terms and conditions of

employment, including, but not limited to, wages, benefits and supplements and is permitted

to commence this action on their behalf.

19.     The IW12 Funds, IWDC Funds, Local 440 Training Fund and IW60 Funds

[collectively referred to as the "Plaintiff Funds", "Funds", "Plaintiff Plans", or "Plans"],

established pursuant to collective bargaining agreements, are multi-employer plans as defined

in § 3(37) of ERISA [29 U.S.C. § 1002(37)], and are employee benefit plans, as described in §

3(3) of ERISA [29 U.S.C. § 1002(3)].

20.     Upon information and belief, Defendant J.D. Miscellaneous Metals, LLC

[hereinafter referred to as "Defendant J.D. Misc. Metals", "Corporation" or "Company"] is

incorporated under the laws of the State of New York, has a principal place of business and

offices located 1089 Alcove Road, Hannacroix, New York 12087, and, at all times relevant

herein, was authorized to do and was doing business in the State of New York.

21.     Upon information and belief, Defendant George Peters [hereinafter referred to as "Defendant Peters"], is an officer and shareholder of Defendant Corporation.  Upon information and belief, Defendant Peters resides at 24 Sunset Hill Road, Hannacroix, NY 12087.

22.     Upon information and belief, Defendant David Jackson [hereinafter referred to as "Defendant Jackson"], is an officer and shareholder of Defendant Corporation.  Upon information and belief, Defendant Jackson resides at 1089 Alcove Road, Hannacroix, NY 12087.

23.     Defendants are employers in an industry affecting commerce, all as defined in ERISA Section 3(5)(11) and (12) [29 U.S.C. §1002(5)(11) and (12)].  Defendants are also employers of employees covered by employee benefit plans and multiemployer plans maintained pursuant to a collective bargaining agreement, all as defined in ERISA Sections 3(3) and (37) [29 U.S.C. §1002(3) and (37)], and are obligated to make contributions to the Funds in accordance with ERISA Section 515 [29 U.S.C. §1145].

24.     Defendants are parties in interest with respect to the Funds as defined in ERISA Section 3(14)(C), (E) and (H) [29 U.S.C. §1002(14)(C), (E) and (H)] and act directly as employers and/or indirectly in the interests of the employers in relation to the Funds, all as defined in ERISA Section 3(5) [29 U.S.C. §1002(5).

25.     To the extent that Defendants exercised any authority or control with respect to the management or disposition of assets of Plaintiff Funds, they are fiduciaries within the meaning of ERISA Section 3(21)(A) [29 U.S.C. §1002(21)(A)].

### III.      FIRST CAUSE OF ACTION

26.      Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "25" inclusive of this Complaint as if set forth fully at this point.

27.      ERISA Section 515 [29 U.S.C. § 1145] provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

28.      At all times relevant herein, Defendant Corporation was party to a collective bargaining agreement with Iron Workers Local Union Nos. 6, 9, 12, 33, 60 and 440, known as the Working Agreement between the Iron Workers Upstate Locals of New York and Vicinity, consisting of International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers Local Union Nos. 6, 9, 12, 33, 60 and 440 and Upstate Iron Workers Employers Association, Inc. effective January 1, 2022 [hereinafter referred to as "CBA"].  The CBA was executed by Defendant Corporation on April 1, 2021 and is still effective.

29.      Pursuant to the CBA, the Defendant Corporation is bound by the terms and conditions, rules and regulations of the Restated Agreement and Declaration of Trust of the Iron Workers Local 12 Pension Fund, the Restated Agreement and Declaration of Trust of the Iron Workers Local 12 Health Fund, the Agreement and Declaration of Trust of the Iron Workers Local 12 Training Fund, [collectively these three (3) documents are hereinafter "IW12 Funds' Trusts"], bound to the Agreement and Declaration of Trust of the Local 12 E.C.T. ["IW12 ECT Trust"], and bound to the Collections Policy of the Iron Workers Local 12 Pension Fund, Health Fund and Training Fund [hereinafter "IW12 Funds' Collections Policy"].

30.     The CBA, IW12 Funds' Trusts, IW12 E.C.T. Trust, and IW12 Funds' Collections Policy obligate Defendant Corporation to submit reports and remit contributions to Plaintiff IW12 Funds and Local 12 E.C.T. for each hour that its employees performed work covered by the CBA, i.e., iron workers' work or bargaining unit work.

31.     The CBA requires Defendant Corporation to deduct stipulated sums from the wages of certain employees who performed work covered by the CBA, i.e., iron workers' work and pay said amounts to Local 12, said amounts representing Local 12 dues.

32.     The CBA, IW12 Funds' Trusts, IW12 E.C.T. Trust, and IW12 Funds' Collections Policy obligate the Defendant Corporation to file its remittance reports and remit the contributions and deductions to Plaintiff IW12 Funds, IW12 E.C.T. and Local 12 by the fifteenth (15th) day of the month following the month during which the hours of bargaining unit work were performed under the CBA.

33.     Under the CBA, the IW12 Funds' Trusts, IW12 E.C.T. Trust, and the IW12 Funds' Collection Policy, and 29 U.S.C. §1132(g)(2), if Defendant Corporation fails to timely remit the required contributions and deductions, it is liable for the amount of contributions and deductions due, plus the following: (1) interest on the unpaid and untimely paid IW12 Funds' contributions, calculated at a rate of eighteen percent (18%) per annum; plus (2) the greater of interest on the unpaid and untimely paid IW12 Funds contributions or liquidated damages equal to twenty percent (20%) of the delinquent IW12 Funds contributions; plus (3) interest on the unpaid and untimely paid IW12 E.C.T. contributions, calculated at the rate of nine percent (9%) per annum; plus (4) interest on the unpaid and untimely paid Local 12 dues deductions, calculated at the rate of nine percent (9%) per annum; plus (5) attorneys' fees and costs.

34.     According to an audit, dated July 31, 2023, of Defendant Corporation's records covering the period April 1, 2021 through May 13, 2023, Defendant Corporation failed to remit $536,441.13 in fringe benefit contributions and deductions to the IW12 Funds, IW12 E.C.T. and Local 12 with regard to hours of bargaining unit work, i.e., ironworkers' work, performed by its employees covered by the aforesaid CBA during the period April 1, 2021 through May 13, 2023.

35.     Defendant Corporation has not paid the fringe benefit contributions outlined in paragraph no. 34, and has not paid the interest, liquidated damages, costs and fees of collection, audit fees, and attorneys' fees due and owing in connection with the unpaid fringe benefit contributions.

36.     Defendant Corporation, therefore, owes $536,441.13 in contributions and deductions to the IW12 Funds, IW12 E.C.T. and Local 12 for the period April 1, 2021 through May 13, 2023, plus the following: (1) interest on the $456,005.72 in unpaid IW12 Funds' contributions at the rate of eighteen percent (18%) per annum; plus (2) the greater of interest on the $456,005.72 in unpaid IW12 Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on the unpaid $36,516.25 in IW12 E.C.T. monies, calculated at the rate of nine percent (9%) per annum; (4) interest on the unpaid $43,919.16 in Local 12 dues deductions, calculated at the rate of nine percent (9%) per annum; plus (5) costs and fees of collection and attorneys' and paralegal fees.

### IV.      SECOND CAUSE OF ACTION

37.      Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "36" inclusive of this Complaint as if set forth fully at this point.

38.      At all times relevant herein, Defendant Corporation was party to a collective bargaining agreement with Iron Workers Local Union Nos. 6, 9, 12, 33, 60 and 440, known as the Working Agreement between the Iron Workers Upstate Locals of New York and Vicinity, consisting of International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers Local Union Nos. 6, 9, 12, 33, 60 and 440 and Upstate Iron Workers Employers Association, Inc. effective January 1, 2022 [hereinafter referred to as "CBA"].  The CBA was executed by Defendant Corporation on April 1, 2021 and is still effective.

39.      Pursuant to the CBA, Defendant Corporation is bound by the terms and conditions, rules and regulations of the Restated Agreements and Declarations of Trust of the Iron Workers District Council of Western New York and Vicinity Welfare Fund, Restated Agreements and Declarations of Trust of the Iron Workers District Council of Western New York and Vicinity Pension Fund, Restated Agreements and Declarations of Trust of the Iron Workers District Council of Western New York and Vicinity Annuity Fund, and the Agreement and Declaration of Trust of the Iron Workers District Council of Western New York and Vicinity Supplemental Benefit Fund, [collectively these four (4) documents are hereinafter "IWDC Funds' Trusts"], the Iron Workers District Council of Western New York and Vicinity Welfare, Pension and Annuity Funds' Collections Policy [hereinafter "IWDC Funds' Collections Policy"], Iron Workers District Council of Western New York and Vicinity Supplemental Benefit Fund Collection's Policy ["S.B. Fund's Collections Policy"], the Restated Agreement and Declaration

of Trust of the International Association of Bridge, Structural and Ornamental Iron Workers Local Union No. 440 Joint Apprentice Training Fund ["Local 440 Training Fund Trust"], and the Agreement and Declaration of Trust of the Upstate New York District Council of Iron Workers and Employers Cooperative Trust ["IWECT Trust"].

40.     The CBA, the IWDC Funds' Trusts, Local 440 Training Fund Trust, IWECT Trust, the IWDC Funds' Collections Policy, and S.B. Fund's Collections Policy obligate Defendant Corporation to remit contributions to the IWDC Funds, Local 440 Training Fund, IWECT and UIWEA for each hour of bargaining unit work, i.e., iron workers' work, covered by the CBA, performed by Defendant Corporation's employees.

41.     The CBA requires Defendant Corporation to deduct stipulated sums from the wages of certain employees who performed work covered by the CBA, i.e., iron workers' work, and pay said amounts to Local 440, said amounts representing Local 440 dues.

42.     The CBA, IWDC Funds' Trusts, IWECT Trust, 440 Training Fund Trust, IWDC Funds' Collections Policy, and S.B. Funds' Collections Policy obligate the Defendant Corporation to file its remittance reports and remit contributions and deductions to the IWDC Funds, Local 440 Training Fund, IWECT, UIWEA, and Local 440 by the fifteenth (15th) day of the month following the month during which the hours were worked by its employees.

43.     Under the CBA, the IWDC Funds' Trusts, IWECT Trust, Local 440 Training Fund Trust, the IWDC Funds' Collections Policy, the S.B. Funds' Collections Policy, and ERISA Sections 515 and 502(g)(2) [29 U.S.C. §§1132(g)(2), 1145], if Defendant Corporation fails to timely remit the required contributions and deductions, it is liable for the amount of contributions and deductions due, plus the following:  (1) interest on the unpaid and untimely paid IWDC Funds

contributions, calculated at the rate of fourteen percent (14%) per annum; (2) the greater of interest on the unpaid and untimely paid IWDC Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on the unpaid and untimely paid Local 440 Training Fund contributions, calculated at the rate prescribed by ERISA [29 U.S.C. §1132(g)(2)]; (4) interest again on the unpaid and untimely paid Local 440 Training Fund contributions, representing liquidated damages; (5) interest on the unpaid and untimely paid IWECT and UIWEA monies, calculated at the rate of nine percent (9%) per annum; plus (6) interest on the unpaid and untimely paid Local 440 dues deductions, calculated at the rate of nine percent (9%) per annum; plus (7) costs and fees of collection, audit fees, and attorneys' and paralegal fees.

44.     According to an audit, dated July 31, 2023, of Defendant Corporation's records covering the period April 1, 2021 through May 13, 2023, Defendant Corporation failed to remit $160,885.12 in fringe benefit contributions and deductions to the IWDC Funds, IWECT, UWEA, Local 440 Training Fund, and Local 440 with regard to hours of bargaining unit work, i.e., ironworkers' work, performed by its employees covered by the aforesaid CBA during the period April 1, 2021 through May 13, 2023.

45.     Defendant Corporation has not paid the fringe benefit contributions outlined in paragraph no. 44 and has not paid the interest, liquidated damages, costs and fees of collection, and attorneys' fees due and owing in connection with the delinquent fringe benefit contributions.

46.     Defendant Corporation, therefore, owes $160,885.12 in contributions and deductions to the IWDC Funds, Local 440 Training Fund, IWECT, UIWEA and Local 440 plus the

following:  (1) interest on the $158,886.72 in unpaid IWDC Funds' contributions, at the rate of fourteen percent (14%) per annum; plus (2) the greater of interest on the $158,886.72 in unpaid IWDC Funds' contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on the $280.80 in unpaid Local 440 Training Fund contributions, at the rate prescribed by ERISA [29 U.S.C. § 1132(g)(2)]; plus (4) interest again on the $280.80 in unpaid Local 440 Training Fund contributions, representing liquidated damages; plus (5) interest on the $424.60 in unpaid Local 440 dues deductions calculated at the rate of nine (9%) per annum; plus (6) interest on the $1,293.00 in unpaid IWECT and UIWEA monies, calculated at the rate of nine percent (9%) per annum; and (7) the costs and fees of collection, audit fees and attorneys' and paralegal fees.

### V.      THIRD CAUSE OF ACTION

47.      Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "46" inclusive of this Complaint as if set forth fully at this point.

48.      At all times relevant herein, Defendant Corporation was party to a collective bargaining agreement with Iron Workers Local Union Nos. 6, 9, 12, 33, 60 and 440, known as the Working Agreement between the Iron Workers Upstate Locals of New York and Vicinity, consisting of International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers Local Union Nos. 6, 9, 12, 33, 60 and 440 and Upstate Iron Workers Employers Association, Inc. effective January 1, 2022 [hereinafter referred to as "CBA"].  The CBA was executed by Defendant Corporation on April 1, 2021 and is still effective.

49.      Pursuant to the CBA, Defendant J.D. Misc. Metals is bound by the terms and conditions, rules and regulations of the Restated Agreements and Declarations of Trust of the

Restated Agreement and Declaration of Trust of the Iron Workers Local Union 60 Annuity

Pension Fund ["IW60 Annuity Fund Trust"]; the Restated Agreement and Declaration of Trust

of the Ironworkers Local No. 60 Training, Skill Improvement, Education and Apprenticeship

Fund ["IW60 Training Fund Trust"] [collectively these two (2) documents are hereinafter

referred to as "IW60 Funds' Trusts"]; and the IW60 Fund's Collections Policy [hereinafter

"IW60 Funds' Collections Policy"].

50.     The CBA, IW60 Funds' Trusts, and IW60 Funds' Collections Policy obligate

Defendant Corporation to remit contributions to the IW60 Funds for each hour of bargaining

unit work, i.e., iron workers' work, covered by the CBA, performed by Defendant Corporation's

employees.

51.     The CBA requires Defendant Corporation to deduct stipulated sums from the

wages of certain employees who performed work covered by the CBA, i.e., iron workers' work,

and pay said amounts to Local 60, said amounts representing Local 60 dues.

52.     The CBA, IW60 Funds' Trusts, and IW60 Funds' Collections Policy obligate the

Defendant Corporation to file its remittance reports and remit contributions and deductions to

the IW60 Funds and Local 60 by the fifteenth (15th) day of the month following the month

during which the hours were worked by its employees.

53.     Under the CBA, the IW60 Funds' Trusts, IW60 Funds' Collections Policy, and

ERISA Sections 515 and 502(g)(2) [29 U.S.C. §§1132(g)(2), 1145], if Defendant Corporation fails

to timely remit the required contributions and deductions, it is liable for the amount of

contributions and deductions due, plus the following: (1) interest on the unpaid and untimely

paid IW60 Funds contributions, calculated at the rate of two percent (2%) per month; plus (2)

{B0351942.1}                                             15

the greater of interest on the unpaid and untimely paid IW60 Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on the unpaid and untimely paid Local 60 dues deductions, calculated at the rate of nine percent (9%) per annum; plus (4) costs and fees of collection, audit fees, and attorneys' and paralegal fees.

54.     According to an audit, dated August 3, 2023, of Defendant Corporation's records covering the period July April 1, 2021 through May 12, 2023, Defendant Corporation failed to remit $14,094.39 in fringe benefit contributions and deductions to the IW60 Funds and Local 60 with regard to hours of bargaining unit work, i.e., ironworkers' work, performed by its employees.

55.     Defendant Corporation has not paid the fringe benefit contributions and deductions outlined in paragraph no. 54, and has not paid the interest, liquidated damages, costs and fees of collection, audit fees, and attorneys' fees due and owing in connection with the unpaid fringe benefit contributions and deductions.

56.     Defendant Corporation, therefore, owes $14,094.39 in contributions and deductions to the IW60 Funds and Local 60 plus the following: (1) interest on the $12,223.71 in unpaid IW60 Funds contributions, calculated at the rate of two percent (2) per month; plus (3) the greater of interest on the $12,223.71 in unpaid IW60 Funds' contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions, plus (4) interest on the $1,870.65 in unpaid Local 60 dues deductions calculated at the rate of nine (9%) per annum, and (5) the costs and fees of collection, audit fees and attorneys' and paralegal fees.

## VI.      FOURTH CAUSE OF ACTION

57.      Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "56" inclusive of this Complaint as if set forth fully at this point.

58.      At all times hereinafter mentioned, Defendant Corporation is obligated to timely remit contributions and deductions to the Plaintiffs in accordance with the CBA, Trusts and Collections Policies.

59.      At all times hereinafter mentioned, Defendant Corporation is contractually liable under the CBA, Trusts and Collections Policies to timely report to Plaintiffs on a monthly basis the number of hours worked by all of its employees performing bargaining unit work, i.e., ironworkers' work.

60.      Defendant Corporation is statutorily obligated under Section 209 of ERISA to maintain accurate and complete books and records of the number of hours of bargaining work, i.e., iron workers' work, performed by all of its employees.

61.      The CBA, IWDC Funds' Trusts, Local 440 Training Fund Trust, IWECT Trust, IWDC Funds' Collections Policy, S.B. Funds' Collections Policy, IW12 Funds' Trusts, IW12 E.C.T. Trust, the IW12 Funds' Collections Policy, the IW60 Funds' Trusts, the IW60 Funds' Collections Policy, ERISA, and the New York Lien Law obligate Defendant Corporation to permit the Plaintiffs, on demand, to check, examine and audit its books and records, papers and reports as may be necessary to permit the Plaintiffs to determine whether Defendant Corporation accurately reported the number of hours of bargaining unit work performed by its employees and to determine the amount of contributions and deductions due and owing to Plaintiffs, including, but not limited to, its payroll records, timecards, accounts payable records, general ledgers,

cash disbursements journal, hours reports, tax returns and any other records relating to hours worked by all employees, including union, non-union, bargaining unit and non-bargaining unit employees, subcontractors, and independent contractors of Defendant Corporation.

62.     Defendant Corporation is contractually liable under the CBA, IWDC Funds' Trusts, IWECT Trust, Local 440 Training Fund Trust, IWDC Funds' Collections Policy, S.B. Funds' Collections Policy, IW12 Funds' Trusts, IW12 E.C.T. Trust, the IW12 Funds' Collections Policy, IW60 Funds' Trusts, and IW60 Funds' Collections Policy to pay the costs and expense of the audit, all auditing fees, and any and all attorneys' and paralegal fees and costs incurred by the Plaintiffs in obtaining an audit.

63.     Defendants have not produced Defendant Corporation's records for the period May 14, 2023 to date for audit, despite due demand for compliance.

64.     Defendants must be ordered to produce Defendant Corporation's books and records for the period May 14, 2023 to date for Plaintiffs' review and audit, to pay the cost and expense of such audit, to pay all auditing fees, and to pay all attorneys' and paralegals' fees and costs incurred in obtaining that audit.

65.     In the event it is discovered that Defendant Corporation has not properly submitted accurate reports to the Plaintiffs and has not properly paid the appropriate monies to the Plaintiffs, the Court must enter a judgment for any and all contributions and deductions that become due or are determined to be due to Plaintiffs, whether arising before or after commencement of the action, plus the applicable interest thereon, liquidated damages, costs and expenses of collection, audit fees and attorneys and paralegal fees, all at the rates set forth in Complaint paragraph nos. 33, 43 and 53.

### VII.    FIFTH CAUSE OF ACTION

66.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "65" inclusive of this Complaint as if set forth fully at this point.

67.     ERISA Section 404(a) provides that fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses" [29 U.S.C. §1104(a)(1)(A)].

68.     ERISA Section 404(a) also provides that fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments" are consistent with federal law [29 U.S.C. §1104(a)(1)(D)].

69.     Absent an exemption, ERISA Section 406, 29 U.S.C. §1106, makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit and to deal with plan assets for their personal account.

70.     New York Lien Law Article 3-A provides that construction contractors and their officers, shareholders, directors, managers and agents must use monies earned for work at a construction project to pay the cost of, among other things, the employees' wages and benefits.

71.     Pursuant to the CBA, "all monies paid into and/or due and owing to the Funds . . . will be vested and remain exclusively in the Trustees of those Funds; outstanding and withheld contributions constitute plan assets".

72.     The IW12 Funds' Trusts, IWDC Funds' Trusts, Local 440 Training Fund Trust, IW60 Funds' Trusts, the IWDC Collections Policy, and IW12 Funds' Collections Policy provide that "title to all monies paid into and/or due and owing to the [Plaintiff Funds] shall be vested in and remained exclusively in the Trustees of the Funds; outstanding and withheld contributions constitute plan assets".

73.     Upon information and belief, during the period April 2021 to date and in connection with various projects, Defendant Corporation employed individuals covered by the CBA who performed work on certain construction projects for the benefit of the projects and Defendants.

74.     Upon information and belief, as a result of the work performed by employees, Defendants received sums of money related to construction projects intended to pay, among other things, the wages and benefits of employees furnishing and supplying the labor.

75.     Defendants are fiduciaries of the monies so received and the monies so received and held by them constitute assets of the Plaintiff Funds to be utilized for the benefit of the Plaintiff Funds.

76.     Defendants have failed to remit to Plaintiff Funds all contributions/trust assets belonging to the Plaintiff Funds, have withheld contributions/trust assets from the Plaintiff Funds, and have received and retained from the Plaintiff Funds, for Defendant Corporation's use and benefit, monies which are rightfully assets of the Plaintiff Funds.

77.     Defendants Peters and Jackson, upon information and belief, owned and controlled the affairs of Defendant Corporation.

78.     Defendants Peters and Jackson, upon information and belief, had managerial discretion and control over Defendant Corporation and/or made decisions on behalf of the Defendant Corporation concerning compliance with the CBA, Trusts and Collections Policy.

79.     Defendants Peters and Jackson, upon information and belief, determined which bills and creditors Defendant Corporation would pay, determined when the Plaintiff Funds would be paid, determined how much money would be paid to the Plaintiff Funds, determined which employees of the Defendant Corporation would be reported to the Plaintiff Funds, determined the number of hours upon which contributions would be reported as owing to the Plaintiff Funds, and exercised control over money due and owing to the Plaintiff Funds, i.e., the plan assets, and therefore, they are fiduciaries.

80.     To the extent that Defendants Peters and Jackson transferred, applied, used or diverted, or permitted the transfer, application, use, or diversion of, the Plaintiff Funds' trust assets to purposes other than purposes of the Plaintiff Funds without first making payment to Plaintiff Funds, Defendants Peters and Jackson acted contrary to their fiduciary obligations and they are guilty of breaching their fiduciary duties under ERISA, 29 U.S.C. §§1104, 1106 and 1109, and the New York Lien Law.

81.     To the extent that Defendants Peters and Jackson commingled, or permitted the commingling of, assets of the Plaintiff Funds with Defendant Corporation's general assets and used, or permitted the use of, the Plaintiff Funds' assets to pay other creditors of Defendant Corporation rather than forwarding the assets to the Plaintiff Funds, they are guilty of breaching their fiduciary duties.

82.     The transfer of the assets to persons other than the Plaintiff Funds occurred, and/or the use of the assets for purposes other than those permitted by the Plaintiffs Funds occurred, upon information and belief, with the knowledge and/or at the direction of Defendants Peters and Jackson.

83.     To the extent that Defendants Peters and Jackson used the Plaintiff Funds' assets for purposes other than the interests of the Plaintiff Funds and their participants and beneficiaries, Defendants Peters and Jackson are in violation of §§1104, 1106, and, 1109 of ERISA and the New York Lien Law.

84.     To the extent that Defendants Peters and Jackson withheld contributions from the Plaintiff Funds and/or untimely paid contributions to the Plaintiff Funds, they have not acted solely in the interests of the participants and beneficiaries and they have acted contrary to the Plaintiff Funds' documents and, therefore, they are individually and personally liable for the violations of ERISA Sections 404 and 406 described herein [29 U.S.C. §§1104 and 1106].

85.     To the extent that the audit and/or remittance reports show that Defendants Peters and Jackson have not paid contributions to the Plaintiff Funds, Defendants Peters and Jackson have breached their fiduciary duties and they are liable to Plaintiff Funds for the following:

> (A)     The $456,005.72 due to the IW12 Funds as set forth at paragraph no. 36 plus interest thereon at the consolidated rate of return on Plaintiff IW12 Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(B)  The $159,167.55 due to the IWDC Funds and Local 440 Training Fund as set forth at paragraph no. 46 plus interest thereon at the consolidated rate of return on Plaintiff IWDC Funds' and Local 440 Training Fund's investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(C)  The $12,223.71 due to the IW60 Funds as set forth at paragraph no. 56 plus interest thereon at the consolidated rate of return on Plaintiff IW60 Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(D)  Any monies discovered to be due to the Plaintiff Funds as uncovered by the audit sought at paragraph nos. 64 and 65 of the Complaint herein plus interest thereon at the consolidated rate of return on Plaintiff  Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees; and

(E)  To restore to the Plaintiff Funds any profits that Defendant Corporation made through use and retention of the assets of the Plaintiff Funds.

## VIII.    SIXTH CAUSE OF ACTION

86.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "85" inclusive of this Complaint as if set forth fully at this point.

87.    Absent an exemption, ERISA Section 406(a) makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit [29 U.S.C. §1106(a)(1)(A) and (B)]. Absent an exemption, ERISA Section 406(b) makes it unlawful for fiduciaries to deal with plan assets for their personal account [29 U.S.C. §1106(b)(1)-(3)].

88.     Section 406 of the Act [29 U.S.C. §1106] provides, in part, that the following is illegal:

      (A)     sale or exchange, or leasing, of any property between the plan and a party in interest;

      (B)     lending of money or other extension of credit between the plan and a party in interest;

      (C)     furnishing of goods, services, or facilities between the plan and a party in interest; and

      (D)     transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

89.     At all times relevant herein, Defendants Peters and Jackson were parties in interest with respect to the Plaintiff Funds because they were fiduciaries, employers, or owners within the meaning of ERISA Section 3(14)(A), (C) (E) and (H) [29 U.S.C. §1002(14)(A), (C), (E) and (H).

90.     Pursuant to the CBA, "all monies paid into and/or due and owing to the Funds . . . will be vested and remain exclusively in the Trustees of those Funds; outstanding and withheld contributions constitute plan assets".

91.     The IW12 Funds' Trusts, IWDC Funds' Trusts, Local 440 Training Fund Trust, IW60 Funds' Trusts, the IWDC Collections Policy, and IW12 Funds' Collections Policy provide that "title to all monies paid into and/or due and owing to the [Plaintiff Funds] shall be vested in and remained exclusively in the Trustees of the Funds; outstanding and withheld contributions constitute plan assets".

92.     To the extent that Defendants Peters and Jackson withheld contributions from and untimely remitted contributions to the Plaintiff Funds, Defendants Peters and Jackson received and retained from the Plaintiff Funds for Defendants' own use and benefit, monies which are rightfully assets of the Plaintiff Funds.

93.     To the extent that Defendants Peters and Jackson withheld, received and retained contributions owed to Plaintiff Funds and untimely remitted contributions to Plaintiff Funds, Defendants Peters and Jackson, as parties in interest, impermissibly used the assets of the Plaintiff Funds in contravention of §406 of the Act, the interests of the Plaintiff Funds and the interests of the Plaintiff Funds' fiduciaries, participants and beneficiaries.

94.     Upon information and belief, Defendants Peters and Jackson have not properly submitted accurate reports to the Plaintiff Funds and have not properly paid the appropriate monies to the Plaintiff Funds and, therefore, they have damaged Plaintiff Funds.

95.     To the extent that the audit and/or remittance reports show that Defendant Corporation has not paid contributions to the Plaintiff Funds, Defendants Peters and Jackson have damaged the Plaintiff Funds and are liable to Plaintiff Funds for the following:

(A)     The $456,005.72 due to the IW12 Funds as set forth at paragraph no. 36 plus interest thereon at the consolidated rate of return on Plaintiff IW12 Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(B)     The $159,167.55 due to the IWDC Funds and Local 440 Training Fund as set forth at paragraph no. 46 plus interest thereon at the consolidated rate of return on Plaintiff IWDC Funds' and Local 440 Training Fund's investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(C)     The $12,223.71 due to the IW60 Funds as set forth at paragraph no. 56 plus interest thereon at the consolidated rate of return on Plaintiff IW60 Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(D)     Any monies discovered to be due to the Plaintiff Funds as uncovered by the audit sought at paragraph nos. 64 and 65 of the Complaint herein plus interest thereon at the consolidated rate of return on Plaintiff  Funds' and IWECT's investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees; and

(E)     To restore to the Plaintiff Funds any profits that Defendant Corporation made through use and retention of the assets of the Plaintiff Funds.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

1.     On Plaintiffs First Cause of Action, judgment against the Defendant Corporation for $536,441.13 in contributions and deductions owed to the IW12 Funds, IW12 E.C.T. and Local 12 for the period April 1, 2021 through May 13, 2023, plus the following: (1) interest on the $456,005.72 in unpaid IW12 Funds' contributions at the rate of eighteen percent (18%) per annum; plus (2) the greater of interest on the $456,005.72 in unpaid IW12 Funds contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest on the unpaid $36,516.25 in IW12 E.C.T. monies, calculated at the rate of nine percent (9%) per annum; (4) interest on the unpaid $43,919.16 in Local 12 dues deductions, calculated at the rate of nine percent (9%) per annum; plus (5) costs and fees of collection and attorneys' and paralegal fees.

2.      On Plaintiffs' Second Cause of Action, judgment against the Defendant

Corporation for $160,885.12 in contributions and deductions owed to the IWDC Funds, Local

440 Training Fund, IWECT, UIWEA and Local 440 plus the following:  (1) interest on the

$158,886.72 in unpaid IWDC Funds' contributions, at the rate of fourteen percent (14%) per

annum; plus (2) the greater of interest on the $158,886.72 in unpaid IWDC Funds'

contributions or liquidated damages equal to twenty percent (20%) of those delinquent

contributions; plus (3) interest on the $280.80 in unpaid Local 440 Training Fund contributions,

at the rate prescribed by ERISA [29 U.S.C. § 1132(g)(2)]; plus (4) interest again on the $280.80

in unpaid Local 440 Training Fund contributions, representing liquidated damages; plus (5)

interest on the $424.60 in unpaid Local 440 dues deductions calculated at the rate of nine (9%)

per annum; plus (6) interest on the $1,293.00 in unpaid IWECT and UIWEA monies, calculated

at the rate of nine percent (9%) per annum; and (7) the costs and fees of collection, audit fees

and attorneys' and paralegal fees.

3.      On Plaintiffs' Third Cause of Action, judgment against the Defendant

Corporation for $14,094.39 in contributions and deductions owed to the IW60 Funds and Local

60 plus the following: (1) interest on the $12,223.71 in unpaid IW60 Funds contributions,

calculated at the rate of two percent (2) per month; plus (3) the greater of interest on the

$12,223.71 in unpaid IW60 Funds' contributions or liquidated damages equal to twenty

percent (20%) of those delinquent contributions, plus (4) interest on the $1,870.65 in unpaid

Local 60 dues deductions calculated at the rate of nine (9%) per annum, and (5) the costs and

fees of collection, audit fees and attorneys' and paralegal fees.

    4.       On Plaintiffs' Fourth Cause of Action, judgment against the Defendant

Corporation:

    (A)     Requiring it to produce its books and records for the period May 14, 2023 to date for Plaintiffs' review and audit, to pay the cost and expense of such audit, to pay all auditing fees, and to pay all attorneys and paralegal fees and costs incurred in obtaining that audit; and

    (B)     For any and all contributions and deductions that are determined to be due, whether arising before or after commencement of this action, plus the applicable interest thereon, liquidated damages, costs and expenses of collection, audit fees and attorneys and paralegal fees, all at the rates set forth in Complaint paragraph nos. 33, 43 and 53.

    5.       On Plaintiffs' Fifth and Sixth Causes of Action, judgment against Defendants

Peters and Jackson for:

    (A)     The $456,005.72 due to the IW12 Funds as set forth at paragraph no. 36 plus interest thereon at the consolidated rate of return on Plaintiff IW12 Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

    (B)     The $159,167.55 due to the IWDC Funds and Local 440 Training Fund as set forth at paragraph no. 46 plus interest thereon at the consolidated rate of return on Plaintiff IWDC Funds' and Local 440 Training Fund's investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

    (C)     The $12,223.71 due to the IW60 Funds as set forth at paragraph no. 56 plus interest thereon at the consolidated rate of return on Plaintiff IW60 Funds' investments, costs and expenses of collection, audit fees and attorneys' and paralegal fees;

(D)     Any monies discovered to be due to the Plaintiff Funds as
        uncovered by the audit sought at paragraph nos. 64 and 65 of
        the Complaint herein plus interest thereon at the consolidated
        rate of return on Plaintiff  Funds' and IWECT's investments,
        costs and expenses of collection, audit fees and attorneys' and
        paralegal fees; and

(E)     To restore to the Plaintiff Funds any profits that Defendant
        Corporation made through use and retention of the assets
        of the Plaintiff Funds.

Dated: October 19, 2023                 BLITMAN & KING LLP

                          By:     /s/Kenneth L. Wagner
                                Kenneth L. Wagner
                                Bar Roll No. 501419
                                *Attorneys for Plaintiffs*
                                Office and Post Office Address
                                Franklin Center, Suite 300
                                443 North Franklin Street
                                Syracuse, New York 13204-1415
                                Telephone: (315) 422-7111
                                Facsimile: (315) 471-2623
                                Email:  klwagner@bklawyers.com